Keith D. Klein (SBN 184846)
Keith.klein@bclplaw.com
Kristy A. Murphy (SBN 252234)
Kristy.murphy@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Attorneys for Plaintiffs
BEYOND FRANCHISE GROUP, LLC and
BEYOND RESTAURANT GROUP, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND FRANCHISE GROUP, LLC; BEYOND RESTAURANT GROUP, LLC, | Case No. |
| Plaintiffs, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:** |
| v. | **(1) BREACH OF FRANCHISE AGREEMENT – TYSONS CORNER;** |
| URBAN POKE 1, LLC; URBAN POKE 2, LLC; ENY TJAHJA; MING-TSUNG CHI; VIENGKEO TZONG; DAVID TZONG; and DOES 1 through 10, inclusive, | **(2) BREACH OF GUARANTY – TYSONS CORNER;** |
| | **(3) BREACH OF FRANCHISE AGREEMENT – CHANTILLY;** |
| Defendants. | **(4) BREACH OF GUARANTY – CHANTILLY;** |
| | **(5) BREACH OF PROMISSORY NOTE;** |
| | **(6) ACCOUNT STATED;** |
| | **(7) INJUNCTIVE RELIEF** |

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

733060.1

COMES NOW Plaintiffs Beyond Franchise Group, LLC ("Beyond Franchise") and Beyond Restaurant Group, LLC ("Beyond Restaurant") (collectively, "Plaintiffs" or "Beyond") by and through their attorneys, and for their Complaint against Defendants Urban Poke 1, LLC ("Urban Poke 1"); Urban Poke 2, LLC ("Urban Poke 2");[1] Eny Tjahja; Ming-Tsung Chi; Viengkeo Tzong; and David Tzong[2] (collectively, "Defendants"), allege as follows:

## I.    INTRODUCTION

1.    Plaintiff Beyond Franchise franchises the Pokéworks® restaurant concept throughout the United States and abroad.

2.    Defendants owned and operated two Pokéworks® franchises in Virginia pursuant to franchise agreements with Beyond Franchise.

3.    Despite the various accommodations Plaintiffs offered to Defendants, Defendants defaulted on their contractual obligations and anticipatorily repudiated their contracts, without any legal basis for doing so.

4.    Although Defendants have prematurely ceased operating their businesses as Pokéworks® restaurants, they have refused to comply with post-termination obligations to de-identify their locations.  As a result, they are infringing Plaintiffs' valuable trademark rights.

5.    Plaintiffs bring this action to recover the outstanding unpaid amounts owed by Defendants, as well as damages caused by Defendants' premature termination, and to enjoin further acts of trademark infringement and unfair competition by Defendants.

/ / /

/ / /

---

[1] "Urban Poke 1 and Poke 2 are sometimes collectively referred to herein as "Franchisees."

[2] Eny Tjahja; Ming-Tsung Chi; Viengkeo Tzong; and David Tzong are sometimes collectively referred to herein as "Guarantors."

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## II.    THE PARTIES

6.    Plaintiff Beyond Franchise is a Delaware limited liability company with its principal place of business in Irvine, California.

7.    Plaintiff Beyond Restaurant is a Delaware limited liability company with its principal place of business in Irvine, California.

8.    On information and belief, Defendant Urban Poke 1 is a Virginia limited liability company with its principal place of business in Fairfax, Virginia.

9.    On information and belief, Defendant Urban Poke 2 is a Virginia limited liability company with its principal place of business in Fairfax, Virginia.

10.    On information and belief, Urban Poke 1 and Urban Poke 2 are owned and operated by Eny Tjahja, Ming-Tsung Chi, Viengkeo Tzong, and David Tzong.

11.    On information and belief, Defendant Eny Tjahja is an individual residing in Haymarket, Virginia.

12.    On information and belief, Defendant Ming-Tsung Chi is an individual residing in Haymarket, Virginia.

13.    On information and belief, Defendant Viengkeo Tzong is an individual residing in Fairfax, Virginia.

14.    On information and belief, Defendant David Tzong is an individual residing in Fairfax, Virginia.

15.    Plaintiffs are unaware of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sue these defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and therefore allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and Plaintiffs' injuries as herein alleged were proximately caused by such defendants.

/ / /

/ / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

## III.   JURISDICTION AND VENUE

16.   This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), in that this case arises under the trademark laws of the United States, 15 U.S.C. §§ 1051, *et seq.*

17.   This Court has pendant jurisdiction under 28 U.S.C. § 1338(b), in that this case arises under claims joined with a substantial and related claim under the trademark laws of the United States.

18.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all claims arising under state law, as such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

19.   This Court has personal jurisdiction over Defendants by virtue of, among other things, Section 16.14(e) of the Franchise Agreements by and between Plaintiff Beyond Franchise and Defendants, described in more detail below, pursuant to which Defendants expressly consented to "personal jurisdiction in the State of California" and agreed that "the state and federal court(s) will have exclusive jurisdiction over any such issues not subject to arbitration."

## IV.   Allegations Common to All Counts

**The Pokéworks® Marks**

20.   Founded in 2015, Pokéworks® is a healthy Hawaiian-inspired fast casual restaurant brand operated by Beyond Franchise.

21.   Pokéworks® has over 60 locations in 3 countries and is ranked #5 in the Restaurant Business Magazine Future 50, a measure of the fastest-growing restaurant concepts with annual sales between $20 million and $50 million.

22.   In the five years since the Pokéworks® restaurants first opened, Plaintiffs have invested significant capital and effort to make Pokéworks® the established quality restaurants they are today.

/ / /

23.     As part of these efforts, Plaintiffs have created, sought, obtained protection for, and enforced an impressive intellectual property portfolio, which includes various trademarks, service marks, trade dress, copyrights, names, logos, and commercial symbols used to identify the Pokéworks® System (the "Pokéworks Marks") so that consumers throughout the United States will recognize the Pokéworks Marks as distinctly designating Pokéworks® restaurants.

24.     Plaintiff Beyond Restaurant owns the Pokéworks Marks and licenses to Beyond Franchising the right to use the Pokéworks Marks and to sublicense the Pokéworks Marks to franchisees for use as part of their businesses.

25.     Plaintiff Beyond Restaurant owns various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Pokéworks Marks").

26.     The following principal Pokéworks Marks, among others, have been registered by Beyond Restaurant on the Principal Register of the United States Patent and Trademark Office:

| POKEWORKS | Reg. No. 5109887, | Registered Dec. 27, 2016 |
|---|---|---|
| POKEWORKS | Reg. No. 5785316, | Registered June 25, 2019 |
| POKE WORKS | Reg. No. 5046901, | Registered Sept. 20, 2016 |
| POKÉ YOUR WAY | Reg. No. 5232416, | Registered June 27, 2017 |
| POKÉ YOUR WAY | Reg. No. 5773195, | Registered June 11, 2019 |
| POKE YOUR WAY | Reg. No. 5776987, | Registered June 11, 2019 |
| Stylized POKEWORKS Logo | Reg. No. 5395083, | Registered Feb. 6, 2018 |
| Stylized POKEWORKS Logo | Reg. No. 5785317, | Registered June 25, 2019 |
| Stylized POKEWORKS Logo | Reg. No. 5395084, | Registered Feb. 6, 2018 |
| Stylized POKEWORKS Logo | Reg. No. 5785318, | Registered June 25, 2019 |
| Stylized POKEWORKS Logo | Reg. No. 5401714, | Registered Feb. 13, 2018 |
| Stylized POKEWORKS Logo | Reg. No. 5785319, | Registered June 25, 2019 |
| Stylized POKEWORKS Logo | Reg. No. 5776988, | Registered June 11, 2019 |

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

27.    The foregoing registrations are in full force and effect and cover the goods and services identified on the registration certificates. Plaintiffs have continuously used each of the Pokéworks Marks since the date of their registration and these marks are valid, subsisting, and some are now incontestable under the Lanham Act, 15 U.S.C. § 1065.

28.    Plaintiff Beyond Franchising has the exclusive right to sublicense the use the Pokéworks Marks, as well as the distinctive Pokéworks® System, which serves its customers by operating under a uniform business format system consisting of high standards of service, the use of consistent quality products, all in accordance with the business format created and developed by Beyond Restaurant.

29.    Plaintiffs have given notice to the public of the registration of the Pokéworks Marks as provided in 15 U.S.C. § 1111.

30.    Through its franchise system, Beyond Franchise markets, promotes, and provides services to its restaurant franchisees throughout the United States.  In order to identify the origin of their restaurant services, Beyond Franchise allows its franchisees to utilize the Pokéworks Marks and to promote the Pokéworks brand name.

**The Tysons Corner Franchise Agreement and Guaranty**

31.    Certain of the Pokéworks restaurant locations are operated pursuant to individual franchise agreements.

32.    Defendants Urban Poke 1 and Urban Poke 2 are franchisees that operated two Pokéworks® restaurants in Virginia.

33.    Prior to entering into any agreement with Beyond Franchise, Defendants were provided with a detailed Franchise Disclosure Document that set forth in plain terms the respective rights of the parties during the franchise relationship and attached copies of all of the contracts to be executed, including the franchise agreement.

/ / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

34.     On or about July 11, 2017, Urban Poke 1 signed a franchise agreement with Beyond Franchise to operate a franchised restaurant in a territory consisting of Tyson Corners, Virginia; Centerville, Virginia; and Reston, Virginia (the "Tysons Corner Franchise Agreement").  A true copy of the Tysons Corner Franchise Agreement is attached hereto as **Exhibit "A"** and is incorporated herein by reference.  Ultimately, a franchised restaurant was opened at 7933 Tysons Corner Center #F12L, McLean, Virginia, 22102 (the "Tysons Corner Store").

35.     Concurrently with the execution of the Tysons Corner Franchise Agreement, the Guarantors also provided Beyond Franchise with a written Guaranty and Indemnity Agreement, personally guaranteeing Urban Poke 1's obligations under the Tysons Corner Franchise Agreement ("Tysons Corner Guaranty").  A true copy of the Tysons Corner Guaranty is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

36.     The Tysons Corner Guaranty expressly provides that the purpose of the Guaranty was "to induce [Beyond Franchise] to enter into" the Tysons Corner Franchise Agreement.

37.     Pursuant to the terms of the Tysons Corner Guaranty, the Guarantors guaranteed, among other things, "the due and punctual payment of all amounts stated to be payable on the part of the Franchisee under the terms of the Franchise Agreement, and the prompt and complete performance of all of the terms, covenants, conditions and agreements contained on the part of the Franchisee pursuant to the Franchise Agreement."  [§ 1]

38.     The Guarantors also agreed "to indemnify and save harmless [Beyond Franchise] from all losses, costs or damages arising out of any failure on the part of the Franchisee to pay the amounts referred to in Section 1 hereof or to perform any of the terms, covenants, conditions, or agreements referred to in Section 1 hereof."  [§ 2]

/ / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

39.     The Tysons Corner Guaranty further provides that it "is absolute and unconditional and applicable to all past and future indebtedness of the Franchisee without limit and however incurred."  [§ 3]

40.     Liability of the Guarantors under the Tysons Corner Guaranty "shall be joint and several."  [§ 10]

**The Royalty Relief Addendum, Release by Defendants, and the Promissory Note**

41.     In the first half of 2020, Defendants reached out to Beyond Franchise for financial assistance because of the impact of the COVID-19 pandemic on the restaurant industry generally, and on the Tysons Corner Store in particular.

42.     Accordingly, the parties entered into an Addendum to the Tysons Corner Franchise Agreement dated October 28, 2020 (the "Addendum").  A true copy of the Addendum is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

43.     Pursuant to the Addendum, Beyond Franchise agreed to waive royalties for the Tysons Corner Franchise Agreement for the period of March 18, 2020 to December 31, 2020, on the condition that Urban Poke 1 (1) participate in Beyond Franchise's Food Cost Recovery Program and (2) Urban Poke 1 and its Designated Manager participate in good faith in weekly calls with the Franchise Business Coach assigned by Beyond Franchise.

44.     The Addendum contained a general release by Urban Poke 1 and the Guarantors ("Release"), pursuant to which they "release[d] . . . and forever discharge[d] [Beyond Franchise], any subsidiary or affiliate of [Beyond Franchise], their respective officers, directors, members, employees, agents, contractors and their respective successors, assigns, heirs and personal representatives, from and against any and all liabilities, actions, causes of action, judgments, suits, controversies, claims, demands, damages, costs and expenses whatsoever, in law or in equity, ***on account of or in any way arising out of or related to the offer, sale,***

1  ***administration, performance, and any default under or of the Agreements***."

2  [Addendum § 8, emphasis added]

3     45.    The parties expressly agreed that the Release "shall include, without

4  limitation, claims, demands and causes of action arising out of alleged

5  misrepresentations of any kind or nature whatsoever, alleged breaches of contract

6  (based upon implied, express, estoppel, waiver, or alternative theories of contractual

7  obligation), or breach of any alleged special, trust, agency or fiduciary relationship,

8  whether asserted or proposed to be asserted by way of claim, setoff, affirmative

9  defense, counterclaim, cross-claim or third party claim (collectively "Claims")

10  arising out of any matters prior to the date of execution hereof, which have ever

11  existed, may now exist or may hereafter arise, known or unknown, foreseen or

12  unforeseen, to the full extent permitted by applicable law."  [*Id.*]

13     46.    As of March 18, 2020, Urban Poke owed $35,811.17 in unpaid fees,

14  charges and other amounts due to Beyond Franchise and Beyond Restaurant.

15     47.    As a further condition to receiving the royalty relief set forth in the

16  Addendum, Urban Poke 1 agreed to issue a Promissory Note to Beyond Franchise in

17  the amount of $33,653.96 and to Beyond Restaurant in the amount of $2,157.21, to

18  be paid in 6 monthly principal installments beginning on July 1, 2021, and

19  continuing on the first day of each month until paid in full ("Note").  A true copy of

20  the Note is attached hereto as **Exhibit "D"** and is incorporated herein by reference.

21     48.    The Note provided that no interest would be due as long as the

22  installments were timely paid when due.  The first late installment, however, would

23  be subject to a one-time late fee of $300.00.  Then a charge of $40.00 would be

24  assessed for each subsequent installment returned unpaid (NSF, Account Closed,

25  etc.).  Late installments would bear interest on the principal amount due after their

26  original due date at the "Default Rate," which shall be the lesser of the highest rate

27  allowed by law or 18% per annum until paid.

28  / / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

49.     The Note further provided that Plaintiffs "may accelerate the maturity of this Note, and all principal and accrued interest shall become immediately due and payable to the holder of this Note if an event of default occurs, without demand, presentment, notice of demand or further right to cure the default."

50.     The "events of default" under the terms of the Note include, *inter alia*:

- "Failure of Borrower to pay any installment of principal or interest when due;"

- "Borrower defaults under its Franchise Agreement with [Beyond Franchise] and fails to cure the breach within any applicable grace periods, or such Franchise Agreement terminates or is subject to termination for any reason or no reason;" and

- "Failure of Borrower to maintain on a current basis any account with [Beyond Franchise], [Beyond Restaurant], or any Affiliate;

51.     Ming-Tsung Chi, Viengkeo Tzong, and David Tzong "jointly and severally, unconditionally, irrevocably and absolutely guaranty the timely payment and performance of this Note as [their] primary obligation."  They further "waive[d] notice of default, notice of amendment, extension or modification, demand, protest, notice, presentment, exhaustion of remedies and all other defenses and conditions precedent to direct enforcement against" them.

52.     Defendants, however, never made a single payment on the Note.  There is now due and owing the full $35,811.17 principal, an initial $300 late fee, interest in the amount of $9,716, and installment penalties of $480, for a total of $46,307.17 due on the Note.

**The Chantilly Franchise Agreement**

53.     Around the time that the Addendum was being discussed, the owners of Urban Poke 1 expressed an interest in operating a second franchised Pokéworks restaurant.

/ / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

54.     The owners of Urban Poke 1 formed a new entity, Urban Poke 2 and, on or about October 28, 2020, Urban Poke 2 signed a franchise agreement with Beyond Franchise (the "Chantilly Franchise Agreement") to operate a franchised Pokéworks® restaurant located at 14383 Newbrook Drive, #201, Chantilly, Virginia 20151 (the "Chantilly Store").  A true copy of the Chantilly Franchise Agreement is attached hereto as **Exhibit "E"** and is incorporated herein by reference.

55.     Based on Guarantors' representation that they lacked funds for the new restaurant, Beyond Franchise agreed that the initial $25,000 franchise fee for the Chantilly Franchise Agreement could be paid in two installments, with $12,500 paid upfront and the remaining $12,500 deferred until July 2021.

56.     Concurrently with the execution of the Chantilly Franchise Agreement, David Tzong and Ming-Tung Chi also provided Beyond Franchise with a written Guaranty and Indemnity Agreement, personally guaranteeing Urban Poke 2's obligations under the Chantilly Franchise Agreement ("Chantilly Guaranty").  A true copy of the Chantilly Guaranty is attached hereto as **Exhibit "F"** and is incorporated herein by reference.

57.     The Chantilly Guaranty expressly provides that the purpose of the Chantilly Guaranty was "to induce [Beyond Franchise ] to enter into" the Chantilly Franchise Agreement.

58.     Pursuant to the terms of the Chantilly Guaranty, David Tzong and Ming-Tung Chi guaranteed, among other things, "the due and punctual payment of all amounts stated to be payable on the part of the Franchisee under the terms of the Franchise Agreement, and the prompt and complete performance of all of the terms, covenants, conditions and agreements contained on the part of the Franchisee pursuant to the Franchise Agreement."  [§ 1]

59.     David Tzong and Ming-Tung Chi also agreed "to indemnify and save harmless [Beyond Franchise] from all losses, costs or damages arising out of any failure on the part of the Franchisee to pay the amounts referred to in Section 1

hereof or to perform any of the terms, covenants, conditions, or agreements referred to in Section 1 hereof." [§ 2]

60.    The Chantilly Guaranty further provides that it "is absolute and unconditional and applicable to all past and future indebtedness of the Franchisee without limit and however incurred." [§ 3]

61.    Liability of David Tzong and Ming-Tung Chi under the Chantilly Guaranty "shall be joint and several." [§ 10]

**Relevant Obligations in the Franchise Agreements**

62.    Pursuant to section 2.1 of both Franchise Agreements, the Franchisees were obligated to operate a Pokéworks® restaurant facility for a ten-year term, during which time the Franchisees were permitted to use the Pokéworks® Marks in association with the operation and use of the restaurant as part of Beyond Franchise's franchise system.

63.    Section 3.1 of both Franchise Agreements provided the Franchisees with a limited license to use the Pokéworks® Marks and System during the term of the franchise. In relevant part, the Franchise Agreements provide:

> On and subject to the terms and conditions contained in this Agreement, the Franchisor grants to the Franchisee the following (collectively, the "License"):

> (a) an exclusive license to carry on the Business only at the Store under the name Pokéworks™ or such other Marks as may be specified from time to time by the Franchisor during the Term or any Interim Period;

> (b) a non-exclusive license to use and display the Marks during the Term and any Interim Period in connection with the operation, advertising and promotion of the Business; and

> (c) a non-exclusive license to use, in connection with the Store, the System.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

The License shall only remain in effect during the Term and so long as the Franchisee continues to operate the Business and does not commit an Event of Default under this Agreement. Upon Termination, such license shall immediately be at an end and the Franchisee shall immediately cease the use of the Marks and the System and shall not thereafter in any way hold itself out as being associated with the Franchisor or the restaurant operations owned or licensed by the Franchisor.

64.    Section 8.2 of both Franchise Agreements requires the Franchisees to pay Beyond Franchise "an ongoing royalty ('Royalty' or 'Royalties') equal to six percent (6%) of Gross Sales during the Term . . ."

65.    Additionally, Section 5.7 of both Franchise Agreements requires the Franchisees to "pay to the Franchisor an amount ("Marketing Fund Contributions") equal to one and one-half percent (1.5%) of Gross Sales, such amount to be calculated and paid weekly as provided for in Section 8.3."

66.    Further, under Section 6.1(l) of both Franchise Agreements, the Franchisees agreed that Beyond Franchise could "require Franchisee to purchase and implement new technology initiatives" and that "Franchisee will be responsible for all fees associated with these new technology initiatives."

67.    Section 5.11 of both Franchise Agreements requires the Franchisees to "actively and continuously carry on the Business at the Store in compliance with the terms of this Agreement."

68.    Section 9.5 of both Franchise Agreements defines an "Event of Default" as including occurrence of an event set forth in Section 9.4.  Among the events listed in Section 9.4 are:

- "abandon[ing] or surrender[ing] or transfer[ing] control of the operation of its Business or fail[ing] to actively carry on business from the Store and

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

such condition continues for two (2) days after notice of such default is given;

- "fail[ing] or refus[ing] to pay any amount owed to the Franchisor, Franchisor's parent, or any of Franchisor's affiliates, or any authorized supplier of the Franchisor or the landlord for any debt whatsoever within five (5) days after a demand for payment . . .;"

- "sell[ing] or offer[ing] for sale any unauthorized product or service;" and

- "fail[ing] to comply with any other provision of this Agreement or any specification, standard or procedure prescribed by Franchisor and Franchisee does not correct such failure within five (5) days, (or such longer period of time as Franchisor in its sole discretion deems appropriate,) after written notice from Franchisor (which shall describe the action that Franchisee must take) is delivered to Franchisee;

69.     Section 10.2 of both Franchise Agreements specified the Franchisees' obligations in the event of a termination of the Franchise Agreement, including their obligation to immediately cease using all of the Pokéworks Marks.  Specifically, the Franchisees agreed that they would:

- "immediately discontinue the use of the Marks in accordance with Section 3.8 of the Agreement," which, in turn, provides that " Franchisee shall immediately cease all use of the Marks, including any colorable imitation thereof, in connection with any goods, services or business and, without restricting the generality of the foregoing, Franchisee agrees not to use the word "Pokéworks" in any manner or form as a trademark, trade name or otherwise in connection with any goods, services or business. Franchisee agrees that this covenant is reasonable and necessary to protect the integrity of the Marks, and that this covenant is enforceable by injunction, including a temporary restraining order, by any court of competent jurisdiction."

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

- "immediately remove all signs, displays, logos, symbols, slogans, graphics, and other things, which contain or display any of the Marks or other names belonging to Franchisor;"

- "deliver to Franchisor all advertising material, bulletins, all copies of the Manual, handbooks, training tapes, drawings, designs, uniforms, correspondence, stationery, files, and paper goods which are in the possession or control of Franchisee and which belong to Franchisor or which bear any Marks, and all copies thereof, including all disks, CD-ROMs, DVDs and electronic copies;" and

- "take such action as Franchisor may request to disassociate itself from the System including, without limitation, to cease and desist using website addresses, e-mail addresses, domain names, and telephone numbers."

70.    Further, "all amounts owing by Franchisee to all third-party creditors and to the Franchisor and any affiliate and subsidiary of Franchisor under any of the agreements entered into by Franchisor or such affiliate or subsidiary shall immediately become due and payable."

71.    Section 15.1(a) of both Franchise Agreements provides that "[d]uring the Term or any Interim Period, neither Franchisee nor Guarantor shall either individually or in partnership or in conjunction with any person or persons, firm, association, syndicate or company as principal, agent, shareholder, employee, advisor, or in any other manner whatsoever, directly or indirectly, carry on or be engaged in or concerned with or interest in the operation of any business which consists substantially of the sale of poké or sushi food items as its main product line."

72.    Section 15.1(b) prohibits competition after termination for a period of two years, as follows: "During the two (2) year period immediately following Termination, neither the Franchisee nor the Guarantor shall either individually or in partnership or in conjunction with any person or persons, firm, association,

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

syndicate or company as principal, agent, shareholder, employee or in any other manner whatsoever, directly or indirectly, carry on or be engaged in or concerned with or interested in the operation of any business which consists substantially of the sale of poké or sushi food items as its main product line and which is located (i) in the Territory, or (ii) within ten (10) miles of any business operating under the Marks."

73.    Section 15.5 of both Franchise Agreements provides for liquidated damages for breach of any of the covenants in Section 15.1, as follows:  "[i]n addition to any other remedies or damages allowed and available to Franchisor under this Agreement, if Franchisee breaches any of the covenants set out in Section 15.1 hereof, Franchisee shall to pay Franchisor, as Liquidated Damages, and not as a penalty, the following amounts:

(a) a fee equal to Franchisors then-current Initial Franchise Fee for each Competitive Business opened by Franchisee or any legal entity controlled by Franchisee or, individually or in partnership or in conjunction with any person or persons, firm, association, syndicate or company as principal, agent, shareholder, employee or in any other manner whatsoever, directly or indirectly, in violation of the said covenants; and

(b) five percent (5%) of each Competitive Business's gross sales until expiration of the non-competition period set forth in Section 15.1(b). Should Franchisee fail to provide Franchisor with a detailed account of such gross sales and all substantiating documentation deemed acceptable to Franchisor, Franchisor shall estimate such gross sales for the purposes of calculating such amount payable by Franchisee under this Section 15.5(b); and

(c) legal fees and disbursements incurred by Franchisor to enforce this Section 15."

74.    Pursuant to Section 16.16 of both Franchise Agreements, the Franchisees agreed that "[t]he court or arbitrator will have the right to award any

relief which it deems proper in the circumstances, including, without limitation, money damages (with interest on unpaid amounts from the date due), lost profits, specific performance, injunctive relief, and attorney's fees and costs."

75.　Section 16.19 further provides that "If Franchisee is in default under this Agreement, then Franchisee shall pay Franchisor all damages, costs, and expenses (including legal fees) that Franchisor incurs as a result of Franchisee's default under this Agreement or any other agreement between Franchisee (and its affiliates) and Franchisor (and our affiliates)."

**Defendants' Defaults and Repudiation of the Franchise Agreements**

76.　On or about April or May of 2021, Defendants asked Beyond Franchise for another round of royalty relief.

77.　Beyond Franchise responded that Defendants would need to resolve an outstanding punch list for the Chantilly Store in order to be compliant before it would consider offering relief.

78.　After this exchange, Defendants stopped communicating with Beyond Franchise and stopped showing up to any weekly calls.

79.　Defendants also began operating a competing concept, Capital Musubi, out of the Tysons Corner Store and Chantilly Store, in violation of the prohibition in the Franchise Agreements against "sell[ing] or offer[ing] for sale any unauthorized product or service" and the covenant not to compete in Section 15.1(a).

80.　In response to a cease and desist letter sent by Beyond Franchising on January 5, 2022, Defendants committed to permanently take down all Capital Musubi branding and cease selling Capital Musubi products at the locations, and Defendants did so for a short time.

81.　Defendants, however, eventually resumed operation of the Capital Musubi business out of the Tysons Corner Store and Chantilly Store and continue to do so of the filing of this action.

/ / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

82.    On or about March 7, 2022, Defendants sent a purported "notice of termination" to Beyond Franchise, voicing various unfounded complaints and purporting to "terminate" their franchises.  A true and correct copy of the March 7, 2022 notice is attached hereto as **Exhibit "G"** and incorporated herein by reference.

83.    Thereafter, on or about March 21, 2022, Defendants sent a purported "formal notice of termination" to Beyond Franchise asserting that they "will effectively terminate the Franchise Agreements" on March 31, 2022.  A true and correct copy of the March 21, 2022 notice is attached hereto as **Exhibit "H"** and incorporated herein by reference.

84.    Defendants, however, had no legal basis for terminating their franchises.

85.    There was no contractual basis for terminating either franchise agreement.  While Section 16.16(b) of the Chantilly Franchise Agreement provides Urban Poke 2 with a right to terminate the Chantilly Franchise Agreement "by written notice to Franchisor delivered within 60 days after the end of any fiscal year if the Annual Statements for the [Tysons Corner] Store for the fiscal year then ended and the preceding fiscal year delivered under Section 8.7 demonstrate that the [Tysons Corner] Store has negative earnings before interest, taxes, depreciation and amortization," Urban Poke 2 did not timely deliver any such notice.

86.    Nor is there any statutory basis for terminating the franchises.  Virginia Code § 13.1-565 permits a franchise to be "declared void by the franchisee at his option by sending a written declaration of that fact and the reasons therefor to the franchisor by registered or certified mail," upon the occurrence of certain specified events, none of which apply here.  Moreover, the declaration must be sent no later than 90 days of execution of the franchise, so Defendants' purported "notice of termination" sent on March 7, 2022 was untimely.

87.    Further, the Franchisees have both failed to timely pay royalties, marketing fund contributions, and technology fees owed to Beyond Franchise as

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

they came due, or within five days after their payment was demanded by Beyond Franchise.  Specifically, at total of $98,502,03 remains outstanding and due under the two franchise agreements for royalties, marketing, and technology fees—$59,489.83 under the Tysons Corner Franchise Agreement and $39,012.20 under the Chantilly Franchise Agreement.

88.     On or about March 22, 2022, counsel for Beyond Franchise responded to Defendants' March 7 and 21, 2022 notices, noting that there was no basis for Defendants' unilateral repudiation of their contracts.  Counsel for Beyond Franchise further advised Defendants that (1) they were in breach of their Franchise Agreements for failing to pay Beyond Franchise outstanding royalties, marketing and technology fees and (2) they had until April 4 to cure this monetary default.  A true and correct copy of the March 22, 2022 demand is attached hereto as **Exhibit "I"** and incorporated herein by reference.

89.     On or about March 24, 2022, counsel for Defendants responded by "rejecting all the claims asserted" in the March 22, 2022 letter.

90.     Following their "notice of termination," Defendants ceased to operate the franchised Pokéworks® businesses at the Tysons Corner Store and Chantilly Store, in breach of their obligations under the Franchise Agreements to "actively and continuously carry on the Business at the Store."

91.     As of April 1, 2022, Defendants had turned off their Point-of-Sale system and all delivery services for both locations.

92.     Defendants' anticipatory repudiation of the Franchise Agreements also constituted an event of default under the Note, permitting Plaintiffs to accelerate the maturity of the Note such that all principal and accrued interest shall become immediately due and payable to Plaintiffs, without demand, presentment, notice of demand or further right to cure the default.

93.     The anticipatory repudiation of the Franchise Agreements precludes the Franchisees from any further use of the Pokéworks Marks in or around the locations.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

94.    Nevertheless, since their anticipatory repudiation of the Franchise Agreements, Defendants have continued to use the Pokéworks Marks without authorization to induce the public to patronize their locations through, among other things, failure to remove Pokéworks exterior signage, interior menu boards, and monument signage.

95.    By letter dated April 11, 2022, Beyond Franchise reiterated the Franchisees' post-termination obligations under the Franchise Agreements, including the requirement that they completely "de-identify" their locations as Pokéworks restaurants.  The April 11, 2022 notice advised the Franchisees that, in light of their anticipatory repudiation of the Franchise Agreements, they were required to:  (a) immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Pokéworks restaurant, (b) discontinue the use of other materials on the premises effectively to distinguish the same from their former appearance as Pokéworks restaurants, (c) removed all items bearing the Pokéworks Marks, (d) change all signs and any listings in directories and similar guides in which the locations were identified as a Pokéworks restaurant , and (e) pay to Beyond Franchise the sum of $1,388,961.03, consisting of $949,986.48 in liquidated damages under Section 16.16 for premature termination, $294,165.35 in liquidated damages under Section 15.5 for breach of their restrictive covenants, the outstanding balance of $98,502.03 for unpaid royalties, marketing and technology fees, and $46,307.17 due on the Note on or before April 14, 2022.  A true copy of the April 11, 2022 Notice is attached hereto as **Exhibit "J"** and incorporated herein by this reference.

96.    Defendants, however, responded on April 14, 2022, rejecting Plaintiffs' "demand for payment of any sums."  A true copy of Defendants' April 14, 2022 Notice is attached hereto as **Exhibit "K"** and incorporated herein by this reference.

97.    Upon information and belief, Defendants continue to misuse the Pokéworks Marks, despite demand from Beyond Franchise.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

98.     Upon information and belief, Defendants' aforesaid unauthorized use of the Poképworks Marks have caused and will continue to cause damage and irreparable harm to Plaintiffs, and is likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiffs and to the goodwill and business reputation symbolized by and associated with their valuable Poképworks Marks, unless preliminarily and permanently enjoined and restrained by the Court.

99.     Plaintiffs have no adequate remedy at law for Defendants' continuing violation of Plaintiffs' rights and Plaintiffs will suffer irreparable injury in an amount that cannot be ascertained at this time if Defendants are allowed to continue to wrongfully use Plaintiffs' valuable Poképworks Marks, and/or any confusingly similar variations thereof.

100.   By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain their further unlawful acts.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract and Anticipatory Repudiation of Tysons Corner Franchise Agreement)

### *Against Urban Poke 1*

101.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 100 of this Complaint, as though fully set forth herein.

102.   As set forth above, Beyond Franchise, on the one hand, and Urban Poke 1, on the other hand, are parties to a written Tysons Corner Franchise Agreement dated July 11, 2017.

103.   Urban Poke 1 is in material breach of the Tysons Corner Franchise Agreement because, among other things, it has been selling and/or offering for sale unauthorized products of a competitor, has failed and/or refused to pay royalties, marketing fund contributions and technology fees owed to Beyond Franchise as they

come due or within five days after its demand for payment, has abandoned and ceased operating the franchised business, and has failed to comply with its post-termination obligation to de-identify the Tysons Corner Store.

104.   Additionally, on or about March 7 and 21, 2022, Urban Poke 1 anticipatorily repudiated the Tysons Corner Franchise Agreement without legal basis, as set forth above.

105.   Beyond Franchise has performed all of its obligations under the Tysons Corner Franchise Agreement, except those obligations that Beyond Franchise was prevented or excused from performing, if any, due to the conduct of Urban Poke 1 as alleged herein.

106.   None of Urban Poke 1's obligations under the Tysons Corner Franchise Agreement have been excused.

107.   As a proximate result of Urban Poke 1's aforementioned breaches of the Tysons Corner Franchise Agreement and premature termination of the Tysons Corner Franchise Agreement, Beyond Franchise has suffered loss, damage and injury, including but not limited to, unpaid royalties, marketing, and technology fees in the amount of $59,489.83 and a loss of future revenue from these recurring fees over the remainder of the ten year term of the Tysons Corner Franchise Agreement.

108.   Pursuant to Section 16.16 of the Tysons Corner Franchise Agreement, Urban Poke 1 agreed that if the Tysons Corner Franchise Agreement is terminated because of Urban Poke 1's default, Urban Poke 1 shall pay liquidated damages to Beyond Franchise in accordance with a formula specified in the Tysons Corner Franchise Agreement, namely a lump sum amount equal to the net present value of the Royalties and Marketing Fund Contributions that would have become due following termination of the agreement for the period the agreement would have remained in effect but for Urban Poke 1's default.  It further provides that Royalties and Marketing Fund Contributions shall be calculated based on the business's

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

average monthly Gross Sales for the twelve (12) months preceding the termination date.

109. As a result of its anticipatory repudiation of the Tysons Corner Franchise Agreement, Urban Poke 1 is also obligated to pay Beyond Franchise liquidated damages in the amount of $475,427.20, as calculated pursuant to Section 16.16 of the Tysons Corner Franchise Agreement—the average monthly Gross Sales of $99,047.47 from April 1, 2021 to March 31, 2022 gives monthly Royalties of $5,942.84 and Marketing Fund Contributions of $1,485.71, times 64 months remaining in the 10 year term.

110. Section 15.5 of the Tysons Corner Franchise Agreement provides for liquidated damages for breach of any of the covenants in Section 15.1, consisting of the following amounts:

(a) a fee equal to Franchisors then-current Initial Franchise Fee for each Competitive Business opened by Franchisee or any legal entity controlled by Franchisee or, individually or in partnership or in conjunction with any person or persons, firm, association, syndicate or company as principal, agent, shareholder, employee or in any other manner whatsoever, directly or indirectly, in violation of the said covenants; and

(b) five percent (5%) of each Competitive Business's gross sales until expiration of the non-competition period set forth in Section 15.1(b). Should Franchisee fail to provide Franchisor with a detailed account of such gross sales and all substantiating documentation deemed acceptable to Franchisor, Franchisor shall estimate such gross sales for the purposes of calculating such amount payable by Franchisee under this Section 15.5(b); and

(c) legal fees and disbursements incurred by Franchisor to enforce this Section 15."

111. As a result of the breach of the non-compete provision in Section 15.1(a) of the Tysons Corner Franchise Agreement, Urban Poke 1 is also obligated

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

to pay Beyond Franchise liquidated damages in the amount of $294,165.35, as calculated pursuant to Section 15.5 of the Tysons Corner Franchise Agreement. Specifically, the then-current Initial Franchise Fee is $35,000, and for 2 locations would be $70,000. That amount is then added to 5% of an estimated monthly gross sales of $166,048.41 (based on the average gross sales of the Pokeworks businesses because Defendants did not provide substantiating documentation of their sales data for their competing business), which would be $8,302.42, for 27 months (to cover the two year non-competition period plus at least three months of competing while still operating the Pokeworks location), or $224,165.35.

112. At the time the Tysons Corner Franchise Agreement was signed, it would have been difficult to estimate the damages in the event of a later breach. The formulas agreed upon by the parties were a reasonable attempt at the time to fix the damages that would be incurred in the event of a breach.

113. Notwithstanding Beyond Franchise's demand for payment, Urban Poke 1 has failed and refused to pay Beyond Franchise the outstanding balance of $59,489.83 for unpaid royalties, marketing, and technology fees, as well as the liquidated damages amounts.

114. Beyond Franchise is also entitled to its reasonable attorneys' fees and costs pursuant to Section 16.16 and 16.19 of the Tysons Corner Franchise Agreement. Beyond Franchise has retained the services of Bryan Cave Leighton Paisner LLP to commence this action to enforce its rights under the Tysons Corner Franchise Agreement, and Beyond Franchise is, therefore, entitled to recover its attorneys' fees and costs from Urban Poke 1 in a sum according to proof.

115. In the event that the Court determines that Urban Poke 1 is not required to pay Beyond Franchise liquidated damages as required by Sections 16.16 and/or 15.5 of the Tysons Corner Franchise Agreement then, in the alternative, Urban Poke 1 is liable to Beyond Franchise for actual damages for the premature termination of the Tysons Corner Franchise Agreement and violation of the restrictive covenants

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1  in an amount which has yet to be ascertained, but which will conform to proof at

2  trial, together with interest, attorneys' fees, and costs of suit.

3  ### SECOND CLAIM FOR RELIEF

4  ### (Breach of Tysons Corner Guaranty)

5  ### *Against the Guarantors*

6  116.   Plaintiffs re-allege and incorporate by reference the allegations

7  contained in paragraphs 1 through 115 of this Complaint, as though fully set forth

8  herein.

9  117.   The Guarantors executed and delivered to Beyond Franchise a written

10  Guaranty dated July 11, 2017, personally guarantying Urban Poke 1's obligations

11  under the Tysons Corner Franchise Agreement.

12  118.   The written Tysons Corner Guaranty is valid and binding on the

13  Guarantors.

14  119.   Pursuant to the terms of the Tysons Corner Guaranty, the Guarantors

15  guaranteed the due and punctual payment of all amounts stated to be payable on the

16  part of Urban Poke 1 under the terms of the Tysons Corner Franchise Agreement,

17  and the prompt and complete performance of all of the terms, covenants, conditions

18  and agreements contained on the part of Urban Poke 1 pursuant to the Tysons

19  Corner Franchise Agreement under the Tysons Corner Franchise Agreement.

20  120.   The purpose of the Tysons Corner Guaranty was to induce Beyond

21  Franchise to enter into the Tysons Corner Franchise Agreement and Beyond

22  Franchise did, in fact, enter into the Tysons Corner Franchise Agreement in reliance

23  on the Tysons Corner Guaranty.

24  121.   Beyond Franchise has duly performed all of its duties and obligations

25  under the Tysons Corner Guaranty and Tysons Corner Franchise Agreement, if any,

26  or has otherwise been excused from such performance due to conduct of Urban

27  Poke 1 and/or Guarantors and their prior material breaches.

28  / / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

122.    As set forth above, Urban Poke 1 has defaulted and failed to perform certain material obligations owed under the Tysons Corner Franchise Agreement. Among other things, Urban Poke 1 has anticipatorily repudiated, and thereby unilaterally terminated, the Tysons Corner Franchise Agreement, has failed and refused to pay Beyond Franchise amounts owed under the Tysons Corner Franchise Agreement, has been selling and/or offering for sale unauthorized products of a competitor, has abandoned and ceased operating the franchised business, and has failed to comply with its post-termination obligation to de-identify the Tysons Corner Store.

123.    The Guarantors, and each of them, breached the Tysons Corner Guaranty by, among other things, failing to pay Beyond Franchise the sums due and owing under the Guaranty by reason of Urban Poke 1's default and nonperformance of obligations under the Tysons Corner Franchise Agreement, as described above, and/or failing to cause Urban Poke 1 to perform each obligation required under the Tysons Corner Franchise Agreement, despite their obligation to do so.

124.    None of the Guarantors' obligations under the Tysons Corner Guaranty have been excused.

125.    As a direct and proximate result of the Guarantors' breach of the Tysons Corner Guaranty, Beyond Franchise has sustained, is sustaining, and will continue to sustain damages in an amount which has yet to be ascertained, but which will conform to proof at trial.

126.    Pursuant to the Tysons Corner Guaranty, the Guarantors are jointly and severally liable to Beyond Franchise for Urban Poke 1's unpaid royalties, marketing and technology fees in the amount of $59,489.83 and liquidated damages in the amount of $769,592.55 (or actual damages in an amount which has yet to be ascertained, but which will conform to proof at trial), together with interest, attorneys' fees, and costs of suit.

/ / /

# THIRD CLAIM FOR RELIEF

## (Breach of Contract and Anticipatory Repudiation of Chantilly Franchise Agreement)

### *Against Urban Poke 2*

127.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 126 of this Complaint, as though fully set forth herein.

128.   As set forth above, Beyond Franchise, on the one hand, and Urban Poke 2, on the other hand, are parties to a written Chantilly Franchise Agreement dated October 28, 2020.

129.   Urban Poke 2  is in material breach of the Chantilly Franchise Agreement because, among other things, it has been selling and/or offering for sale unauthorized products of a competitor, has failed and/or refused to pay royalties, marketing fund contributions and technology fees owed to Beyond Franchise as they come due or within five days after its demand for payment, has abandoned and ceased operating the franchised business, and has failed to comply with its post-termination obligation to de-identify the Chantilly Store.

130.   Additionally, on or about March 7 and 21, 2022, Urban Poke 2 anticipatorily repudiated, and thereby unilaterally terminated, the Chantilly Franchise Agreement without legal basis, as set forth above.  Such conduct amounts to a material breach of the Chantilly Franchise Agreement and permits Beyond Franchise to sue immediately for breach.

131.   Beyond Franchise has performed all of its obligations under the Chantilly Franchise Agreement, except those obligations that Beyond Franchise was prevented or excused from performing, if any, due to the conduct of Urban Poke 2 as alleged herein.

132.   None of Urban Poke 2's obligations under the Chantilly Franchise Agreement have been excused.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

133.   As a proximate result of Urban Poke 2's aforementioned breaches of the Chantilly Franchise Agreement and premature termination of the Chantilly Franchise Agreement, Beyond Franchise has suffered loss, damage and injury, including but not limited to unpaid royalties, marketing, and technology fees in the amount of $39,012.20 and a loss of future revenue from these recurring fees over the remainder of the ten year term of the Chantilly Franchise Agreement.

134.   Pursuant to Section 16.16 of the Chantilly Franchise Agreement, Urban Poke 2 agreed that if the Chantilly Franchise Agreement is terminated because of Urban Poke 2's default, Urban Poke 2 shall pay liquidated damages to Beyond Franchise in accordance with a formula specified in the Chantilly Franchise Agreement, namely "a lump sum amount equal to the net present value of the Royalties and Marketing Fund Contributions that would have become due following termination of the agreement for the period the agreement would have remained in effect but for Urban Poke 1's default.  It further provides that Royalties and Marketing Fund Contributions shall be calculated based on the business' average monthly Gross Sales for the twelve (12) months preceding the termination date."

135.   As a result of its anticipatory repudiation of the Chantilly Franchise Agreement, Urban Poke 2 is also obligated to pay Beyond Franchise liquidated damages in the amount of $474,559.28, as calculated pursuant to Section 16.16 of the Chantilly Franchise Agreement—the average monthly Gross Sales of $67,000.94 from April 1, 2021 to March 31, 2022 gives monthly Royalties of $4,056.06 and Marketing Fund Contributions of $507.01, times 104 months remaining in the 10 year term.

136.   Section 15.5 of the Chantilly Franchise Agreement provides for liquidated damages for breach of any of the covenants in Section 15.1, consisting of the following amounts:

(a) a fee equal to Franchisors then-current Initial Franchise Fee for each Competitive Business opened by Franchisee or any legal entity controlled by

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Franchisee or, individually or in partnership or in conjunction with any person

2   or persons, firm, association, syndicate or company as principal, agent,

3   shareholder, employee or in any other manner whatsoever, directly or

4   indirectly, in violation of the said covenants; and

5   (b) five percent (5%) of each Competitive Business's gross sales until

6   expiration of the non-competition period set forth in Section 15.1(b). Should

7   Franchisee fail to provide Franchisor with a detailed account of such gross

8   sales and all substantiating documentation deemed acceptable to Franchisor,

9   Franchisor shall estimate such gross sales for the purposes of calculating such

10  amount payable by Franchisee under this Section 15.5(b); and

11  (c) legal fees and disbursements incurred by Franchisor to enforce this

12  Section 15."

13  137.   As a result of the breach of the non-compete provision in Section

14  15.1(a) of the Chantilly Franchise Agreement, Urban Poke 2 is also obligated to pay

15  Beyond Franchise liquidated damages in the amount of $294,165.35, as calculated

16  pursuant to Section 15.5 of the Chantilly Franchise Agreement.  Specifically, the

17  then-current Initial Franchise Fee is $35,000, and for 2 locations would be $70,000.

18  That amount is then added to 5% of an estimated monthly gross sales of

19  $166,048.41 (based on the average gross sales of the Pokeworks businesses because

20  Defendants did not provide substantiating documentation of their sales data for their

21  competing business), which would be $8,302.42, for 27 months (to cover the two

22  year non-competition period plus at least three months of competing while still

23  operating the Pokeworks location), or $224,165.35.

24  138.   At the time the Chantilly Franchise Agreement was signed, it would

25  have been difficult to estimate the damages in the event of a later breach.  The

26  formulas agreed upon by the parties were a reasonable attempt at the time to fix the

27  damages that would be incurred in the event of a breach.

28  / / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

139.    Notwithstanding Beyond Franchise's demand for payment, Urban Poke 2 has failed and refused to pay Beyond Franchise the outstanding balance of $39,012.20 for unpaid royalties, marketing, and technology fees, as well as the liquidated damages amounts.

140.    Beyond Franchise is also entitled to its reasonable attorneys' fees and costs pursuant to Section 16.16 and 16.19 of the Chantilly Franchise Agreement. Beyond Franchise has retained the services of Bryan Cave Leighton Paisner LLP to commence this action to enforce its rights under the Chantilly Franchise Agreement, and Beyond Franchise is, therefore, entitled to recover its attorneys' fees and costs from Urban Poke 2 in a sum according to proof.

141.    In the event that the Court determines that Urban Poke 2 is not required to pay Beyond Franchise liquidated damages as required by Section 16.16 and/or 15.5 of the Chantilly Franchise Agreement then, in the alternative, Urban Poke 2 is liable to Beyond Franchise for actual damages for the premature termination of the Chantilly Franchise Agreement and violation of the restrictive covenants , in an amount which has yet to be ascertained, but which will conform to proof at trial, together with interest, attorneys' fees, and costs of suit.

## FOURTH CLAIM FOR RELIEF

### (For Breach of Chantilly Guaranty)

### *Against David Tzong and Ming-Tung Chi*

142.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 141 of this Complaint, as though fully set forth herein.

143.    David Tzong and Ming-Tung Chi executed and delivered to Beyond Franchise a written Guaranty dated October 28, 2020, personally guarantying Urban Poke 2's obligations under the Chantilly Franchise Agreement.

144.    The written Chantilly Guaranty is valid and binding on David Tzong and Ming-Tung Chi.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

145.   Pursuant to the terms of the Chantilly Guaranty, David Tzong and Ming-Tung Chi guaranteed the due and punctual payment of all amounts stated to be payable on the part of Urban Poke 2 under the terms of the Chantilly Franchise Agreement, and the prompt and complete performance of all of the terms, covenants, conditions and agreements contained on the part of Urban Poke 2 pursuant to the Chantilly Franchise Agreement under the Chantilly Franchise Agreement.

146.   The purpose of the Chantilly Guaranty was to induce Beyond Franchise to enter into the Chantilly Franchise Agreement and Beyond Franchise did, in fact, enter into the Chantilly Franchise Agreement in reliance on the Chantilly Guaranty.

147.   Beyond Franchise has duly performed all of its duties and obligations under the Chantilly Guaranty and Chantilly Franchise Agreement, if any, or has otherwise been excused from such performance due to conduct of Urban Poke 2 and/or David Tzong and Ming-Tung Chi and their prior material breaches.

148.   As set forth above, Urban Poke 2 has defaulted and failed to perform certain material obligations owed under the Chantilly Franchise Agreement.  Among other things, Urban Poke 2 has anticipatorily repudiated, and thereby unilaterally terminated, the Chantilly Franchise Agreement, has failed and refused to pay Beyond Franchise amounts owed under the Chantilly Franchise Agreement, has been selling and/or offering for sale unauthorized products of a competitor, has abandoned and ceased operating the franchised business, and has failed to comply with its post-termination obligation to de-identify the Chantilly Store.

149.   David Tzong and Ming-Tung Chi, and each of them, breached the Chantilly Guaranty by, among other things, failing to pay Beyond Franchise the sums due and owing under the Chantilly Guaranty by reason of Urban Poke 2's default and nonperformance of obligations under the Chantilly Franchise Agreement, as described above, and/or failing to cause Urban Poke 2 to perform

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  each obligation required under the Chantilly Franchise Agreement, despite their

2  obligation to do so.

3      150.   None of the obligations of David Tzong and Ming-Tung Chi under the

4  Chantilly Guaranty have been excused.

5      151.   As a direct and proximate result of the breach of the Chantilly Guaranty

6  by David Tzong and Ming-Tung Chi, Beyond Franchise has sustained, is sustaining,

7  and will continue to sustain damages in an amount which has yet to be ascertained,

8  but which will conform to proof at trial.

9      152.   Pursuant to the Chantilly Guaranty, the Guarantors are jointly and

10  severally liable to Beyond Franchise for Urban Poke 2's unpaid royalties, marketing

11  and technology fees in the amount of $39,012.20 and liquidated damages in the

12  amount of $768,724.63 (or actual damages in an amount which has yet to be

13  ascertained, but which will conform to proof at trial), together with interest,

14  attorneys' fees, and costs of suit.

15                          **FIFTH CLAIM FOR RELIEF**

16                          **(Breach of Promissory Note)**

17      ***Against Urban Poke 1, Ming-Tsung Chi, Viengkeo Tzong, and David Tzong***

18      153.   Plaintiffs re-allege and incorporate by reference the allegations

19  contained in paragraphs 1 through 152 of this Complaint, as though fully set forth

20  herein.

21      154.   Plaintiffs have been at all times and are currently the holders of the

22  Note with the rights to enforce it.

23      155.   The Note is a valid and enforceable contract between Plaintiffs and

24  Defendants.

25      156.   Plaintiffs have fully performed under the Note by forbearing collection

26  of the $35,811.17 owed by Urban Poke 1.

27      157.   Urban Poke 1 is in default under the Note by, among other things,

28  failing to repay the principal as contractually obligated.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1   158.   Defendants' anticipatory repudiation of the Franchise Agreements also

2   constituted an event of default under the Notice, permitting Plaintiffs to accelerate

3   the maturity of the Note such that all principal and accrued interest shall become

4   immediately due and payable to Plaintiffs, without demand, presentment, notice of

5   demand or further right to cure the default.

6   159.   Despite repeated demands and attempts to work with Urban Poke 1 on

7   repayment, as of the filing of this Complaint, Urban Poke 1 has never made a single

8   payment on the Note.

9   160.   As a direct and proximate result of Urban Poke 1's defaults, there is

10  immediately due and owing to Plaintiffs the unpaid principal sum of $35,811.17, an

11  initial $300 late fee, interest in the amount of $9,716, and installment penalties of

12  $480, for a total of $46,307.17 due on the Note, plus interest accruing at the rate of

13  the lesser of the highest rate allowed by law or 18% per annum through the final

14  date of repayment or judgment.

15  161.   Ming-Tsung Chi, Viengkeo Tzong, and David Tzong are jointly and

16  severally liable for payment, having unconditionally, irrevocably and absolutely

17  guaranteed the timely payment and performance of the Note as their primary

18  obligation.

19  ## SIXTH CLAIM FOR RELIEF

20  ### (Account Stated)

21  ### *Against Urban Poke 1, Ming-Tsung Chi, Viengkeo Tzong, and David Tzong*

22  162.   Plaintiffs re-allege and incorporate by reference the allegations

23  contained in paragraphs 1 through 161 of this Complaint, as though fully set forth

24  herein.

25  163.   Defendants Urban Poke 1, Ming-Tsung Chi, Viengkeo Tzong, and

26  David Tzong became indebted to Plaintiffs within the last four years for money due

27  from previous transactions.

28  / / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

164.    An account was stated in writing by and between Plaintiffs and Urban Poke 1, and on such statement a balance of $35,811.17 was found due to Plaintiffs from Urban Poke 1.

165.    Urban Poke 1, Ming-Tsung Chi, Viengkeo Tzong, and David Tzong agreed to pay to Plaintiffs said balance.

166.    Although demanded by Plaintiffs , Urban Poke 1, Ming-Tsung Chi, Viengkeo Tzong, and David Tzong have not paid Plaintiffs all of the amounts owed under this account.

167.    There is now due, owing, and unpaid from Defendants to Plaintiffs the sum of $46,307.17, plus interest accruing at the rate of the lesser of the highest rate allowed by law or 18% per annum through the final date of repayment or judgment.

168.    Plaintiffs have incurred attorney's fees in connection with this matter, in an amount to be determined at trial, which fees Plaintiffs are entitled to recover pursuant to agreement.

## SEVENTH CLAIM FOR RELIEF

**(Federal Trademark Infringement and False Designation of Origin, 15 U.S.C. §§ 1114(1), 1125(a))**

*Against All Defendants*

169.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 168 of this Complaint, as though fully set forth herein.

170.    Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

171.   Defendants marketed, promoted, offered for sale, and sold, and continues to market, promote, offer for sale, and sell food and beverages at the restaurants through the unauthorized use of the Pokéworks Marks after their repudiation of the Franchise Agreements, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

172.   Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

173.   The acts of Defendants in marketing, promoting, offering for sale, and selling food and beverages at their restaurants, through and with the Pokéworks Marks, after their repudiation of the Franchise Agreements constitute:

(a)   a false designation of origin;

(b)   a false and misleading description of fact; and

(c)   a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of the Defendants' restaurants with Plaintiffs, and to cause confusion, or to cause mistake, or deception, to the effect that Plaintiffs sponsor or approve of the goods and services that Defendants provide at their restaurants, all in violation of Section 43(a) of the Lanham Act.

174.   Defendants' on-going acts of infringement in violation of Sections 32 and 43(a) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

/ / /

/ / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

175.   Defendants' on-going acts of infringement in violation of Sections 32 and 43(a) of the Lanham Act have inflicted and continue to inflict irreparable harm on Plaintiffs.

176.   Upon information and belief, Defendants' aforesaid acts in violation of Section 32 and 43(a) of the Lanham Act have caused and will continue to cause damage and irreparable harm to Plaintiffs, and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiffs and to the goodwill and business reputation symbolized by and associated with their valuable Pokéworks Marks, unless preliminarily and permanently enjoined and restrained by the Court.

177.   Plaintiffs have no adequate remedy at law for Defendants' continuing violation of Plaintiffs' rights and Plaintiffs will suffer irreparable injury in an amount that cannot be ascertained at this time if Defendants are allowed to continue to wrongfully use Plaintiffs' valuable Pokéworks Marks, and/or any confusingly similar variations thereof.

178.   By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further unlawful acts.

179.   Defendants have profited and are profiting from their unlawful conduct and Plaintiffs have been and are being damaged as a proximate result of such conduct.  Plaintiffs are, therefore, entitled to recover damages from Defendants in an amount to be proved at trial, as well as the costs of corrective advertising.

## EIGHTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

### *Against All Defendants*

180.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 179 of this Complaint, as though fully set forth herein.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California  90401-2386

181.   Plaintiffs have continuously used the Pokéworks Marks in commerce in connection with Plaintiffs' goods and services since at least as early as October 15, 2015, and, accordingly, have established common law trademark rights in the Pokéworks Marks.

182.   The Pokéworks Marks are inherently distinctive and/or have acquired strong secondary meaning among the trade, with consumers, and the relevant purchasing public in the trade, in the State of California and indeed throughout the entire United States.  Through Plaintiffs' use, consumers and the relevant purchasing public have come to use the Pokéworks Marks to associate, identify, and distinguish Plaintiffs as the source of origin of Plaintiffs' goods and services.

183.   Defendants' unlicensed, unconsented to, and otherwise unauthorized use of the Pokéworks Marks and/or confusingly similar variations thereof on or in connection with marketing, advertising, promoting, offering for sale, and selling its similar products and/or services after their repudiation of the Franchise Agreements constitutes infringement of Plaintiffs' common law trademark rights in the Pokéworks Marks and misappropriates the valuable goodwill developed by Plaintiffs in the Pokéworks Marks.

184.   On information and belief, such conduct has caused and is likely to continue to cause the general public, trade, consumers, and the relevant purchasing public to be confused, misled and deceived as to the source of origin of Defendants' goods and/or services, and, further, to confuse, mislead, and deceive such persons into wrongly believing that Defendants' business is affiliated with, connected with, associated with, sponsored by, endorsed by, administered by, supervised by, or otherwise connected with Plaintiffs.

185.   Upon information and belief, Defendants were, or should have been, aware of Plaintiffs' use of and corresponding rights in the Pokéworks Marks and the actions of Defendants were undertaken with an intentional, willful, or malicious

1   intent to trade upon the goodwill associated with and the distinctiveness, strength,

2   and value of Plaintiffs' Pokéworks Marks.

3       186.   Upon information and belief, Defendants' aforesaid acts in violation of

4   California common law have caused and will continue to cause damage and

5   irreparable harm to Plaintiffs, and are likely to continue unabated, thereby causing

6   further damage and irreparable harm to Plaintiffs and to the goodwill and business

7   reputation symbolized by and associated with their valuable Pokéworks Marks,

8   unless preliminarily and permanently enjoined and restrained by the Court.

9       187.   Plaintiffs have no adequate remedy at law for Defendants' continuing

10  violation of Plaintiffs' rights and Plaintiffs will suffer irreparable injury in an

11  amount that cannot be ascertained at this time if Defendants are allowed to continue

12  to wrongfully use Plaintiffs' valuable Pokéworks Marks, and/or any confusingly

13  similar variations thereof.

14      188.   By reason of the foregoing, Plaintiffs are entitled to preliminary and

15  permanent injunctive relief against Defendants, and anyone acting in concert with

16  Defendants, to restrain further acts of infringement of Plaintiffs' rights and, after

17  trial, to recover any damages proven to have been caused by reason of Defendants

18  aforesaid acts of infringement, Defendants profits, costs of corrective advertising,

19  any enhanced damages justified by the willful and intentional nature of such acts,

20  and other damages according to proof at trial, including costs and attorneys' fees.

## NINTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

*Against All Defendants*

24      189.   Plaintiffs re-allege and incorporate by reference the allegations

25  contained in paragraphs 1 through 188 of this Complaint, as though fully set forth

26  herein.

27      190.   Defendants unlicensed, unconsented to, and otherwise unauthorized use

28  of the Pokéworks Marks and/or confusingly similar variations thereof on or in

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    connection with marketing, advertising, promoting, offering for sale, and selling its

2    similar products and/or services after their repudiation of the Franchise Agreements

3    constitutes a false designation of origin that wrongly suggests to the trade, relevant

4    purchasing public and consumers that such products and/or services emanate from,

5    or are licensed, endorsed, approved, or sponsored by, or are in some other way

6    associated or connected with Plaintiffs.

7        191.    The above-described conduct of Defendants constitutes a false

8    description or representation tending to suggest to consumers and the relevant

9    purchasing public that Plaintiffs are the source of origin of such products and/or

10    services.

11        192.    Upon information and belief, the above-described conduct of

12    Defendants has caused and is likely to continue to cause the trade, consumers and

13    the relevant purchasing public to be confused, deceived and mistaken as to the

14    source of origin of the products and/or services being offered and sold by

15    Defendants, and, further, to confuse, mislead, and deceive such persons into

16    wrongly believing that Defendants' business is affiliated with, connected with,

17    associated with, sponsored by, endorsed by, administered by, supervised by, or

18    otherwise connected with Plaintiffs.

19        193.    Upon information and belief, Defendants have intentionally traded and

20    infringed upon Plaintiffs' Pokéworks Marks and misrepresented the source of origin

21    of their products and/or services.

22        194.    By virtue of Defendants' acts described above, Defendants have

23    committed and are continuing to commit acts of unfair competition and false

24    designation of origin under California common law.

25        195.    Upon information and belief, Defendants' aforesaid acts of unfair

26    competition and false designation of origin have caused and will continue to cause

27    damage and irreparable harm to Plaintiffs, and are likely to continue unabated,

28    thereby causing further damage and irreparable harm to Plaintiffs and to the

goodwill and business reputation symbolized by and associated with their valuable Pokéworks Marks, unless preliminarily and permanently enjoined and restrained by the Court.

196.    Plaintiffs have no adequate remedy at law for Defendants' continuing violation of Plaintiffs' rights and Plaintiffs will suffer irreparable injury in an amount that cannot be ascertained at this time if Defendants are allowed to continue to wrongfully use Plaintiffs' valuable Pokéworks Marks, and/or any confusingly similar variations thereof.

197.    By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of unfair competition and false designation of origin and, after trial, to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of unfair competition and false designation of origin, Defendants' profits, costs of corrective advertising, any enhanced damages justified by the willful and intentional nature of such acts, and other damages according to proof at trial, including costs and attorneys' fees.

## TENTH CLAIM FOR RELIEF

### (Unfair Competition in Violation of California
### Business & Professions Code §§ 17200, *et seq.*)

*Against All Defendants*

198.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 197 of this Complaint, as though fully set forth herein.

199.    The acts of Defendants alleged herein constitute unlawful, unfair and fraudulent business acts or practices as defined by California Business & Professions Code §§ 17200, *et seq.*

200.    Plaintiffs have valid and protectable rights in the Pokéworks Marks.

/ / /

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

201.   Defendants' unlicensed, unconsented to, and otherwise unauthorized use of the Pokéworks Marks and/or confusingly similar variations thereof on or in connection with marketing, distributing, advertising, promoting, offering for sale, and selling Defendants' similar products and/or services constitutes trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), and unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and, therefore, is an "unlawful" business act or practice in violation of California Business & Professions Code §§ 17200, *et seq.*

202.   The above-described acts and practices by Defendants and their continuing willful and concerted effort to trade on Plaintiffs' goodwill constitute "unfair" business acts or practices in violation of California Business & Professions Code §§ 17200, *et seq.*

203.   The above-described acts and practices by Defendants, on information and belief, have caused and are likely to continue to cause the general public, trade, consumers, and the relevant purchasing public to be confused, misled and deceived as to the source of origin of Defendants' goods and/or services, and, further, to confuse, mislead, and deceive such persons into wrongly believing that Defendants' business is affiliated with, connected with, associated with, sponsored by, endorsed by, administered by, supervised by, or otherwise connected with Plaintiffs.  Thus, above-described acts and practices by Defendants are also likely to mislead or deceive the general public and, therefore, constitute "fraudulent" business acts or practices and/or unfair, deceptive, untrue or misleading advertising in violation of California Business & Professions Code §§ 17200, *et seq.*

204.   As a direct and proximate result of Defendants' aforesaid acts and practices in violation of California Business & Professions Code § 17200, Plaintiffs have suffered injury in fact and have lost money and profits, and such damage and irreparable harm to Plaintiffs and to the goodwill and business reputation symbolized by and associated with their valuable Pokéworks Marks will continue

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1  unabated unless and until Defendants' acts are preliminarily and permanently

2  enjoined and restrained by the Court.

3      205.   Plaintiffs have no adequate remedy at law for Defendants' continuing

4  violation of Plaintiffs' rights and Plaintiffs will suffer irreparable injury in an

5  amount that cannot be ascertained at this time if Defendants are allowed to continue

6  to wrongfully use Plaintiffs' valuable Pokéworks Marks, and/or any confusingly

7  similar variations thereof.

8      206.   Further, the above-described unlawful, unfair, and fraudulent business

9  acts and practices of Defendants present a continuing threat to, and are meant to

10  deceive members of the public in that Defendants continue to promote their

11  restaurants by wrongfully trading on the goodwill of the Pokéworks Marks.

12      207.   Accordingly, Plaintiffs are entitled to injunctive relief pursuant to

13  California Business & Professions Code § 17203.

14              **V. Prayer for Relief**

15      WHEREFORE, Plaintiffs prays for judgment against Defendants and in favor of

16  Plaintiffs, as follows:

17      1.      For general, compensatory, liquidated, incidental, and consequential

18  damages, according to proof;

19      2.      For interest on all sums due at the maximum rate allowed by law;

20      3.      For entry of a preliminary and permanent injunction enjoining

21  Defendants, and all others acting in concert with Defendants, and their successors

22  and assigns, from:

23          a.      using any reproduction, counterfeit, copy, or colorable imitation

24  of the Pokéworks Marks to identify any goods or the rendering of any services not

25  authorized by Plaintiffs;

26          b.      engaging in any course of conduct likely to cause confusion,

27  deception or mistake, or injure Plaintiffs' business reputation or weaken the

28  distinctive quality of the Pokéworks Marks, Plaintiffs' name, reputation or goodwill;

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1       c. further infringing the Pokéworks Marks by distributing,

2    circulating, selling, marketing, offering for sale, advertising, promoting, displaying

3    or otherwise disposing of any products or services not authorized by Plaintiffs

4    bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the

5    Pokéworks Marks;

6       d. using any simulation, reproduction, counterfeit, copy or

7    colorable imitation of the Pokéworks Marks in connection with the promotion,

8    advertisement, display, sale, offering for sale, circulation or distribution of any

9    unauthorized products or services in such fashion as to relate or connect, or tend to

10   relate or connect, such products in any way to Plaintiffs, or to any goods sold,

11   manufactured, sponsored or approved by, or connected with Plaintiffs;

12      e. making any statement or representation whatsoever, or using any

13   false designation of origin or false description, or performing any act, which can or

14   is likely to lead the trade or public, or individual members thereof, to believe that

15   any services provided, or any products manufactured, distributed, sold or offered for

16   sale, by Defendants are in any way associated or connected with Plaintiffs, or is

17   provided, sold, manufactured, licensed, sponsored, approved or authorized by

18   Plaintiffs;

19      f. engaging in any conduct constituting an infringement of any of

20   the Pokéworks Marks, of Plaintiffs' rights in, or to use or to exploit, said

21   trademarks, or constituting any weakening of Plaintiffs' name, reputation or

22   goodwill;

23      g. secreting, destroying, altering, removing, or otherwise dealing

24   with any books or records which contain any information relating to the distributing,

25   circulating, selling, marketing, offering for sale, advertising, promoting, or

26   displaying of all unauthorized products or services which infringe the Pokéworks

27   Marks; and

28      h. effecting assignments or transfers, forming new entities or

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    associations or utilizing any other device for the purpose of circumventing or

2    otherwise avoiding the prohibitions set forth in subparagraphs (a) through (g);

3         4.    An order directing Defendants to file with this Court and serve on

4    Plaintiffs' counsel within 30 days after service of an injunction, a report under oath

5    setting forth in detail the manner and form in which Defendants have complied with

6    the injunction, pursuant to 15 U.S.C. § 1116(a);

7         5.    For an award of Plaintiffs' reasonable attorneys' fees and costs of suit;

8    and

9         6.    For such other and further relief as the Court deems just and proper.

10   Dated:  April 18, 2022                    Respectfully submitted,

11                                            **BRYAN CAVE LEIGHTON PAISNER**
                                             **LLP**
12

13                                            By:   _/s/ Keith D. Klein_____

14                                            Keith D. Klein
                                             Attorneys for Plaintiffs
15                                            BEYOND FRANCHISE GROUP, LLC and
                                             BEYOND RESTAURANT GROUP, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28